IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 28, 2005

## ROBERT ROYSDEN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Roane County**
**No. 12,367B     E. Eugene Eblen, Judge**

_____

**No. E2005-00113-CCA-R3-PC - Filed November 16, 2005**

_____

The petitioner, Robert Roysden, appeals the denial of his petition for post-conviction relief, arguing that his guilty pleas were unknowing and involuntary and that he was denied the effective assistance of trial counsel. Following our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JERRY L. SMITH, JJ., joined.

Jeffery H. Wicks, Kingston, Tennessee, for the appellant, Robert Roysden.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; J. Scott McCluen, District Attorney General; and D. Roger Delp, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner was indicted by the Roane County Grand Jury on one count of first degree premeditated murder, two counts of first degree felony murder, one count of theft of property over $500, a Class E felony, and three counts of forgery, also a Class E felony, based on his March 5, 2000, participation with a codefendant in the murder of an elderly woman acquaintance during the course of a robbery and theft. On April 2, 2002, the petitioner pled guilty to one count of second degree murder, one count of theft of property over $500, and three counts of forgery in exchange for the dismissal of the remaining counts of the indictment and the dismissal of a subsequent attempted escape charge pending against him. Pursuant to the terms of his plea agreement, the petitioner was sentenced as a Range II offender to forty years at 100% for the second degree murder conviction, two years for the theft conviction, and one year for each of the forgery convictions. All of the sentences were ordered to be served concurrently with the exception of one of the forgery sentences, which was

ordered to be served consecutively to the forty-year sentence for second degree murder, for a total effective sentence of forty-one years.

During his recitation of the facts prior to the petitioner's entry of the guilty pleas, the prosecutor stated in pertinent part:

That on March the 5th of 2000, both of these defendants [the petitioner and his codefendant, Charles William Anthony York] took an active role in the killing of Ms. Anderson [the victim], knowingly. That they hid her body underneath a bed or somewhere in the house for a time period in order for Mr. York's father to come and do laundry and not find the body. That they left the home taking about $80.00 that Ms. Anderson had in her sock. Also took her 1985 Ford Mustang and several blank personal checks all of which belonged to Ms. Anderson and which they took without her [e]ffective consent and with intent to deprive Ms. Anderson of that property.

On May 20, 2002, the petitioner filed a *pro se* petition for post-conviction relief in which he alleged, *inter alia*, that his guilty pleas were unknowing and involuntary and that he was denied the effective assistance of trial counsel. Post-conviction counsel was appointed and an evidentiary hearing held on August 15, 2003. At the hearing, the twenty-two-year-old petitioner testified he had been a freshman for four years and a sophomore for one year and had completed his GED while at the Mountain View Youth Detention Center. He said his appointed trial counsel did not meet with him until eight to ten months after he had been indicted, never explained the charges in the indictment to him, and did not review the discovery materials with him. In addition, he did not recall counsel's having ever explained the potential sentences he faced. The petitioner said counsel reviewed his mental status and had a mental evaluation performed but, other than that, did not discuss any possible defenses with him. He testified that counsel met with him only about four times in total.

The petitioner acknowledged he gave a statement, which detailed his involvement in the crimes, to law enforcement officers. However, he testified that he had taken two sixty-milligram morphine pills immediately before his arrest and was therefore "very intoxicated" when he gave the statement. In addition, he claimed that the Tennessee Bureau of Investigation agent who conducted the interview was "very intimidating," telling him that they had physical evidence linking him to the crime scene.

The petitioner testified his understanding of the plea agreement was that he would be pleading guilty to second degree murder in exchange for a Range I sentence of forty years. He said counsel never explained the difference between a Range I and a Range II sentence to him and did not tell him that he was agreeing to be sentenced outside of his range. He said he first learned the difference when the inmate who helped him prepare his post-conviction petition informed him he should not have received a Range II sentence for his first felony. The petitioner further testified that he had broken his leg in three places, been released from the hospital only a few days before the guilty plea hearing, and had taken a Lortab approximately twenty minutes before he made his

wheelchair-bound courtroom appearance to enter his guilty pleas. As a result, his mind was not focused on the hearing and he did not understand that he was agreeing to a forty-one-year sentence at 100%. The petitioner described his mental state at the time:

> I wasn't thinking. I was just -- I wasn't processing what was really going on. I was in pain. I was just ready to get everything over with. Forty years is what they said. And that's when I signed it. Let's go. I was -- didn't want to prolong it. I was in a lot of pain.

On cross-examination, the petitioner acknowledged he was able to read and write. He claimed he did not remember much from the guilty plea hearing, but he did not dispute that the transcript reflected he had informed the trial court that he was satisfied with counsel's representation and that the facts of the case, as stated by the prosecutor, were substantially correct. He also claimed not to remember the details of his statement to police. He conceded, however, that the statement reflected that it had not been made until approximately nine or ten hours after his arrest. The petitioner further conceded that an investigator from the public defender's office had read the plea agreement to him and that he had signed it. He reiterated, however, that he had not understood what he was signing. The petitioner acknowledged he never informed his trial counsel or the trial court that he was under the influence of a drug during the guilty plea hearing.

On redirect examination, the petitioner agreed that it was trial counsel, rather than himself, who answered the trial court's final question at the guilty plea hearing, "Is that the way you understand the agreement?" He testified he, therefore, was not sure he had been present for the entire hearing.

Trial counsel testified he had been employed with the Ninth Judicial District Public Defender's Office since July 1992, with the exception of a brief period from December 1998 through September 1999 that he spent in private practice. He said he met with the petitioner several times during the course of his representation and recalled that he and a colleague had first gone to see the petitioner in jail while his case was still in general sessions court. Trial counsel stated that they discussed at that time having a psychological evaluation performed on the petitioner but that he did not think it was done until the case had been transferred to criminal court. Trial counsel testified he explained the charges to the petitioner, who appeared to understand them; conducted discovery; reviewed the petitioner's statement; and investigated the circumstances under which the statement had been made. He said he did not find any reasons to move to have the statement suppressed.

According to trial counsel, the combination of the physical evidence, the codefendant and the petitioner's statements, and the results of the petitioner's mental evaluation led him to conclude that "this was a case that [they] did not want to try" and that they needed to "do something to get off the first degree murder charge." He, therefore, approached the State about a settlement, which resulted in a package deal offer from the State. Under its terms, the petitioner and his codefendant were both given the opportunity to plead guilty to second degree murder in exchange for a Range II, forty-year sentence for the petitioner and a Range II, thirty-year sentence for the codefendant.

Trial counsel said the petitioner's codefendant rejected the offer, and he feared that the State would withdraw it from the petitioner as well. However, although the prosecutor informed him that the State would be re-indicting the petitioner on felony murder charges, he also indicated that it would nonetheless still allow the petitioner to plead guilty to second degree murder in exchange for a Range II sentence of forty years.

Trial counsel testified he fully explained to the petitioner the difference between a Range I and a Range II sentence; the fact that there was no "Range I" status as such for first degree murder, but instead a minimum sentence of life, which had been determined to be sixty years with fifty-one years required before becoming eligible for parole; and the reason that the State was offering the forty-year, Range II sentence:

> But, I explained to [the petitioner], that the reason the State was going to make this 40-year offer was, since there's no middle ground - - since he was a Range 1 Offender, there's no middle ground as a Range 1 Offender between a maximum of 25 years and a mandatory 60 years. So the only way you could compromise between 25 years max and 60 was to make a second degree offer in Range 2. And that's what the State did. They made an offer in Range 2 for 40 years, which is essentially a compromise between a 25-year maximum on Range 1 in second degree murder, and a mandatory life sentence on first degree murder as a "Range 1 Offender."

Trial counsel also recalled specific conversations he had with the petitioner about why he could be sentenced outside his normal range. He testified that running one of the petitioner's one-year forgery sentences consecutively to the forty-year sentence for second degree murder was in exchange for the State's dismissal of an attempted escape charge the petitioner had received, based on his participation with fellow inmates in an escape attempt from the Roane County Jail.

Trial counsel identified his handwriting on the guilty plea agreement in a notation to the side of the page that states, "Total Effective Sentence 41 years," with the words "Range II" crossed out below it. He said he did not know why he had crossed out the words "Range II," but it may have been because the forgery sentences were Range I, which meant that the effective sentence "was actually 40 years in Range 2, and one year in Range 1." Trial counsel explained that he had answered the trial court's final question at the guilty plea hearing because the court had been looking at him when he asked it. He further testified, however, that he did not know that the petitioner had not responded to the question as well and that he may have nodded.

On cross-examination, trial counsel acknowledged that the prosecutor had wanted to delay the entry of the petitioner's guilty pleas until after the disposition of the codefendant's case but that the petitioner, who was eager to be transferred from the county jail to the penitentiary, had insisted that the guilty plea hearing be held earlier. Trial counsel confirmed that the same plea agreement had been in place for months:

Q       Yes. Do you remember our conversation, and me wanting to wait until after the disposition of the co-defendant before we actually entered his plea?

A       Yes.

Q       And is he the person who was contacting you, wanting to get that plea done?

A       Yes.

Q       And is there anything about his sentence that you see there in the transcript, that is different from what his agreement was, and had been for months?

A       I've not looked at the judgment order, but the plea agreement is exactly what our agreement was.
        (Looks at documents.)
        Yes, this is the agreement.  Plus, I don't see the dismissal on the attempted escape, but I think that was dismissed, too.

Q       Yes.  If you recall, we did the one year consecutive here, basically, instead of pursuing the felony escape item.  And that way he didn't have to come back here.

A       That's right.

Finally, trial counsel testified there was nothing about the petitioner to indicate that he was under the influence of any drugs or otherwise unable to understand what he was doing when he entered his guilty pleas.

At the conclusion of the hearing, the post-conviction court denied the petition, finding that it was clear from the record that the petitioner had known exactly what he was doing when he entered the guilty pleas.  In a detailed written order entered on December 17, 2004, the court found, among other things, that trial counsel was an experienced criminal attorney, that he had been well-prepared for the case, and that the petitioner had failed to show that his representation had been deficient in any way.  The court further found that the petitioner had fully understood the plea agreement, including the difference between a Range I and Range II sentence, and had therefore entered the pleas knowingly, voluntarily, and intelligently.

## ANALYSIS

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See  Tenn. Code Ann. § 40-30-110(f) (2003).  When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal

unless the evidence preponderates against them.  See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996).  Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence.  See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997).  However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness.  See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).  The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

## II.  Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.  In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial.  Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

## III.  Petitioner's Claims of Ineffective Assistance of Counsel

In support of his ineffective assistance of counsel claim, the petitioner cites his testimony that trial counsel did not meet with him until eight to ten months after he was indicted, did not review

discovery with him or discuss possible defenses other than his mental status, and did not explain the charges against him or the difference between a Range I and Range II sentence for second degree murder. The petitioner contends that were it not for these alleged deficiencies in counsel's representation, in particular counsel's alleged failure to explain the sentence, he would not have pled guilty but instead would have insisted on going to trial.

The record in this case, however, fully supports the post-conviction court's finding that counsel provided effective representation. Trial counsel's testimony, which was accredited by the post-conviction court, established that he met with the petitioner on a number of different occasions, including before the petitioner's case had been transferred to criminal court, that he thoroughly prepared for and investigated the case, and that he fully informed the petitioner of the consequences of the plea agreement, including the difference between a Range I and Range II sentence. At the evidentiary hearing, trial counsel recalled with specificity the context of his discussions with the petitioner:

> And I discussed with that whereas he did not have enough convictions to actually be, if he were convicted of second degree murder, he could not be sentenced in Range 2. However, if he pled guilty to second degree murder, he could, by agreement, be sentenced as a Range 2 Offender, if that was the agreement of the parties. That the case law holds that despite the fact the defendant does not have the requisite convictions to place him in Range 2, he can, by agreement, agree that he is in Range 2, and be sentenced in Range 2. And that was a pure compromise between the mandatory 60 on a first degree murder and the 25-year max on second degree murder in Range 1.

In sum, there is no evidence that counsel was deficient in his representation or that the petitioner would not have pled guilty were it not for counsel's alleged deficiencies. We conclude, therefore, that the petitioner is not entitled to post-conviction relief on the basis of his claim of ineffective assistance of counsel.

### IV. Voluntariness of Guilty Plea

In an interrelated claim, the petitioner also contends that his guilty pleas were not knowingly, voluntarily, or intelligently entered. Specifically, he asserts that he entered into the pleas under the mistaken belief that he was agreeing to be sentenced as a Range I offender for the second degree murder conviction. In support, he cites his testimony that trial counsel failed to explain the sentences to him and that he was in extreme pain and under the influence of Lortab at the time he entered his pleas. In addition, he points to the fact that the words "Range II" were stricken from trial counsel's note on his plea agreement and that it was trial counsel who answered the trial court's question about whether the prosecutor had accurately stated what the plea agreement entailed. The State argues that the evidence supports the post-conviction court's finding that the petitioner freely, voluntarily, and knowingly entered his plea. We agree with the State.

When analyzing a guilty plea, we look to the federal standard announced in <u>Boykin v. Alabama</u>, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the state standard set out in <u>State v. Mackey</u>, 553 S.W.2d 337 (Tenn. 1977). <u>State v. Pettus</u>, 986 S.W.2d 540, 542 (Tenn. 1999). In <u>Boykin</u>, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, the Tennessee Supreme Court in <u>Mackey</u> required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. <u>Pettus</u>, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. <u>Blankenship v. State</u>, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. <u>Pettus</u>, 986 S.W.2d at 542; <u>Blankenship</u>, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. <u>Blankenship</u>, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. <u>Id.</u> at 904-05.

Trial counsel's testimony, which was accredited by the post-conviction court, established that the petitioner was fully informed of the consequences of his pleas, including the fact that he was agreeing to be sentenced outside his normal range for the second degree murder conviction; that it was the petitioner who insisted that he be allowed to enter his pleas before his codefendant's case had been resolved, due in part to his desire to expedite his transfer from the Roane County Jail; and that the petitioner did not appear to be under the influence of any drug at the hearing.

The petitioner's own testimony established that he had obtained his GED and that he was able to read and write. He acknowledged that he signed the guilty plea agreement, which clearly stated the State's recommended sentence for the second degree murder conviction as "40 yrs, R-II multiple-A 100 % Service-Violent." Moreover, trial counsel explained why he might have crossed out the words "Range II," beneath the words "Total Effective Sentence 41 years." We note that nowhere does the agreement state that the total effective sentence is 41 years as a Range I offender. Furthermore, the transcript of the guilty plea hearing reflects that the petitioner responded appropriately when asked if he understood the various constitutional rights as described by the trial court, if he understood he was waiving certain rights by pleading guilty, whether he had been fully informed of the charges and the plea agreement by his counsel, whether he understood his guilty pleas, and whether he was satisfied with counsel's representation.

As the following exchange between the prosecutor and the petitioner at the post-conviction hearing reveals, the petitioner was apparently satisfied with his plea bargain until he reached the penitentiary and began talking about his sentence with the inmate law clerk:

Q       Okay. Now the truth is, you weren't worried about this sentence, because you got what you thought you were getting, until you got up to the prison, and some inmate said, well, you're not really Range Two. You should be Range One?

A       Uh-huh (affirmative).

Q       And that's what got you all fired up; true?

A       I should have got 25 years, yes, sir.

Q       Okay. But that wasn't your agreement, was it?

A       I didn't know that that was a possible agreement that I could have had.

Q       Well, let me stop you right there, Mr. Roysden. It wasn't. You weren't ever going to be offered that. And your lawyers told you that, didn't they?

A       No, they never told me that.

We, therefore, conclude that the record fully supports the post-conviction court's finding that the petitioner's guilty pleas were knowingly, intelligently, and voluntarily entered.

## CONCLUSION

Based on our review, we conclude that the petitioner has failed to show either that trial counsel was ineffective or that his guilty pleas were unknowing and involuntary. Accordingly, we affirm the denial of his petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE